**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:26-cv-23721-GAYLES**

ADIDAS AG, *et al.*,

      **Plaintiffs**,

v.

**THE INDIVIDUALS, BUSINESS**
**ENTITIES, AND UNINCORPORATED**
**ASSOCIATIONS IDENTIFIED ON**
**SCHEDULE "A"**,

      **Defendants**.      /

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** comes before the Court on Plaintiffs, adidas AG, adidas International Marketing B.V., and adidas America, Inc's ("Plaintiffs") Motion for Preliminary Injunction (the "Motion"). [ECF No. 6]. The Court has reviewed the Motion and the record and is otherwise fully advised. By the instant Motion, Plaintiffs move for entry of a preliminary injunction against Defendants for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

The Court convened a hearing on June 25, 2026, which was only attended by Plaintiffs' counsel. During the hearing, Plaintiffs directed the Court to evidence supporting the Motion. Defendants have not responded to the Motion, made any filing, or appeared in this matter either individually or through counsel. Because Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction, Plaintiffs' Motion is granted.

## I.  FACTUAL BACKGROUND[1]

1.  Plaintiffs are the owners of the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "adidas Marks"). *See* Declaration of Sara Vanderhoff in Support of Motion for Preliminary Injunction ("Vanderhoff Decl."). [ECF No. 6-1 ¶¶ 4-5]. The adidas Marks are used in connection with the manufacture and distribution of quality goods and services in the categories identified therein. *See id.*

2.  Defendants, by operating e-commerce stores under the seller names identified on Schedule "A" hereto, have advertised, promoted, offered for sale, or sold goods using what Plaintiffs have determined to be counterfeits, infringements, reproductions, or colorable imitations of the adidas Marks. *See* Vanderhoff Decl. ¶¶ 13–17; Declaration of Virgilio Gigante in Support of Motion for Preliminary Injunction ("Gigante Decl.") [ECF No. 6-3 ¶ 2]; Declaration of Kathleen Burns in Support of Motion for Preliminary Injunction ("Burns Decl.") [ECF No. 6-4 ¶ 4].

3.  Although Defendants may not copy and infringe the adidas Marks, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed one or more of the adidas Marks. *See* Vanderhoff Decl. [ECF No. 6-1 ¶¶ 13–17]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the adidas Marks. *See id.* ¶¶ 13, 17–16.

4.  Plaintiffs' counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiffs' products by Defendants and to document Defendants' payment account data for receipt of funds paid to Defendants for the sale of such counterfeit adidas branded products. *See*

---

[1] The factual background is taken from Plaintiffs' Amended Complaint, [ECF No. 15], Plaintiffs' Motion for Preliminary Injunction, [ECF No. 6], and supporting evidentiary submissions.

Vanderhoff Decl. [ECF No. 6-1 ¶ 14]; Gigante Decl. [ECF No. 6-3 ¶ 2]; Burns Decl. [ECF No. 6-4 ¶ 3]. Invisible accessed the e-commerce stores operating under Defendants' e-commerce store names identified on Schedule "A" hereto (the "E-commerce Store Names"), placed an order from each Defendant for the purchase of a product using counterfeits of one or more of the adidas Marks, and requested each product be shipped or billed to the Southern District of Florida. *See* Burns Decl. [ECF No. 6-4 ¶ 4] and Composite Exhibit 1 thereto [ECF No. 6-5]. Each order was processed entirely online, and following the submission of the orders, Invisible documented the information for finalizing payment[2] for the adidas-branded products ordered from Defendants to their respective financial account information.[3] *See* Burns Decl. [ECF No. 6-4 ¶ 4] and Composite Exhibit 1 thereto [ECF No. 6-5]. At the conclusion of the process, the detailed web page captures reflecting Plaintiffs' adidas-branded products offered for sale and ordered via the E-commerce Store Names were sent to Plaintiffs' representative for inspection. *See* Burns Decl. [ECF No. 6-4 ¶ 6] and Composite Exhibit 1 thereto [ECF No. 6-5]; Gigante Decl. [ECF No. 6-3 ¶ 2]; Vanderhoff Decl. [ECF No. 6-1 ¶ 15].

5.      Plaintiffs' representative reviewed and visually inspected the detailed web page captures reflecting Plaintiffs' branded products ordered by Invisible and determined the products were not genuine versions of Plaintiffs' goods. *See* Vanderhoff Decl. [ECF No. 6-1 ¶¶ 16–17].

6.      On May 27, 2026, Plaintiffs filed their Complaint, [ECF No. 1], and thereafter their Amended Complaint on June 22, 2026, [ECF No. 15], against Defendants for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and

---

[2] Invisible did not transmit the funds to finalize the sale for the orders from Defendants so as to avoid funding Defendants' coffers. *See* Burns Decl. [ECF No. 6-4 ¶ 4, n.1].

[3] The other means of contact for Defendants, including customer service e-mail addresses and WhatsApp phone numbers are included in Schedule "A" annexed hereto. *See* Burns Decl. [ECF No. 6-4 ¶ 4, n.2].

3

common law trademark infringement. On June 15, 2026, Plaintiffs filed their *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF No. 6]. On June 15, 2026, the Court entered a sealed Order Granting *Ex Parte* Temporary Restraining Order, [ECF No. 10], and temporarily restrained Defendants from infringing the adidas Marks at issue. The sealed Order Granting *Ex Parte* Temporary Restraining Order also directed PayPal, Inc. ("PayPal") and Stripe, Inc. ("Stripe"), to identify and restrain funds in payment accounts associated with Defendants and to divert those funds to a holding account. Pursuant to the Court's June 18, 2026, Order, Plaintiffs properly served Defendants with a copy of the Complaint, copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, and the Court's June 15, 2026, Temporary Restraining Order. [ECF Nos. 19, 20]. Specifically, Plaintiffs provided notice and copies of the June 15, 2026, Temporary Restraining Order and Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets via email to each Defendant's corresponding email and/or online contact form, or via the registrar of record for each of the domain names, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at https://servingnotice.com/D3a8mz5/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant. *Id.*

## II.      LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-

movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

## III.   ANALYSIS

The declarations Plaintiffs submitted in support of their Motion support the following conclusions of law:

A.      Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the adidas Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiffs' products that bear copies of the adidas Marks.

B.      Because of the infringement of the adidas Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. It clearly appears from the following specific facts, as set forth in Plaintiffs' Amended Complaint, Motion, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers because it is more likely than not that:

1.      Defendants own or control Internet based e-commerce stores operating under their seller names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiffs' rights; and

2.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiffs' trademarks will appear in the marketplace; that consumers are likely to be misled, confused, or disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their genuine products.

C.      The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiffs, their reputation, and their goodwill as a manufacturer and distributor of quality products, if such relief is not issued.

D.      The public interest favors issuance of the preliminary injunction to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit and infringing goods as Plaintiffs' genuine goods.

E.      Under 15 U.S.C. § 1117(a), Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the adidas Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: [a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.") (internal citation omitted).

F.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.,* 51 F.3d 982, 987 (11th Cir. 1995).

G.      Considering the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiffs have good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained

Accordingly, it is **ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. §1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's inherent authority, that Plaintiffs' Motion for Preliminary Injunction, [ECF No. 6], is **GRANTED** as follows:

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined from:

a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the adidas Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

b. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of:

(i) any products, not manufactured or distributed by Plaintiffs, bearing and/or using the adidas Marks or any confusingly similar trademarks;

(ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the adidas Marks or any confusingly similar trademarks; or

(iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall

immediately discontinue, until further Order of this Court, the use of the adidas Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated or controlled by them including the Internet based e-commerce stores operating under the E-commerce Store Names.

3.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the adidas Marks or any confusingly similar trademarks within domain name extensions, metatags, or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the E- commerce Store Names.

4.      Defendants shall not transfer ownership of the E-commerce Store names during the pendency of this action, or until further notice of the Court.

5.      Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Order.

6.      Upon Plaintiffs' request, the registrar and/or privacy protection service for any of the E-commerce Store Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered, to the extent not already done, to disclose to Plaintiffs the true identities and contact information of those registrants.

7.      Upon receipt of notice of this Order, Defendants, and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including, but not limited to, PayPal, Inc. ("PayPal") and Stripe, Inc. ("Stripe"), and their related companies and affiliates shall, to the extent not already done:

a.      immediately identify all financial accounts and/or sub-accounts associated with the e-commerce stores operating under the E-commerce Store Names identified on Schedule "A" hereto, as well as the financial accounts, merchant identification numbers, merchant names, and email address identified in Composite Exhibit 1 [ECF No. 6-5] to the Burns Decl., and any other related accounts of the same customer(s);

b.      identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order;

c.      restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and

d.      immediately divert those restrained funds to a holding account for the trust of the Court.

8.      Upon receipt of notice of this Order, Defendants, and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including, but not limited to, PayPal and Stripe, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiffs' counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) that have been restrained. No funds

9

restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including, but not limited to, PayPal and Stripe, and their related companies and affiliates for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court.

9.      Any Defendant or financial institution account holder subject to this Order may petition the Court at any time to modify the asset restraint set out in this Order.

10.      This Order shall apply to the E-commerce Store Names, associated e-commerce stores, and financial accounts, and any other e-commerce store names or financial accounts which are being used by Defendants for the purpose of counterfeiting the adidas Marks at issue in this action and/or unfairly competing with Plaintiffs.

11.      This Order shall no longer apply to any Defendant or associated e-commerce store dismissed from this action or as to which Plaintiffs have withdrawn their request for a Preliminary Injunction.

12.      Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiffs shall maintain their previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

13.      Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, messaging services, and/or financial institutions, payment processors,

10

banks, escrow services, money transmitters, and marketplace platforms, including, but not limited to, PayPal and Stripe, and their related companies and affiliates shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any email address(es) known to be associated with Defendants' respective E-commerce Store Names.

14.     This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of June, 2026.

_____

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

11

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, E-COMMERCE STORE NAME**
**AND MEANS OF CONTACT**

| Def. No. | Defendant / E-commerce Store Name | Means of Contact E-mail & WhatsApp |
|---|---|---|
| 1 | zoraball.com | support@zoradx.cn<br><br>8618476815042<br>8618998294503 |
| 2 | kesws.com | support@mmdaixi.com<br><br>8618998294503<br>8617512826863 |
| 3 | mmdaixi.com | support@mmdaixi.com<br><br>8618998294503<br>8617512826863 |
| 4 | zaball.cn | support@zoradx.cn<br>support2@mmdaixi.com<br><br>8618476815042 |
| 5 | happysoccer.myshoplaza.com | support@zoradx.cn<br><br>8618476815042<br>8618998294503 |

12

## SCHEDULE "B"
## PLAINTIFFS' MARKS

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| ADIDAS | 0,891,222 | May 19, 1970 | IC25. sport shoes namely, track and field shoes, baseball, boxing, football, skating, golf, and soccer shoes; sportswear namely, suits, shorts, pants, tights, shirts, gloves, and the like; jerseys; socks; sport shoes namely, track and field training shoes, basketball shoes, and tennis shoes. |
| | 0,973,161 | November 20, 1973 | IC 018. tote bags.<br>IC 25. specific purpose athletic shoes; general purpose sport shoes, sportswear-namely, suits, shorts, pants, tights, shirts, jerseys, socks, and gloves. |
| adidas | 1,300,627 | October 16, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Boots, Shoes, Slippers. |
| | 1,310,140 | December 18, 1984 | IC 025. Sportswear-Namely, Suits, Shorts, Pants, Tights, Shirts, Jerseys, Socks, Gloves, Jackets, Coats, Swimwear, Sweaters, Caps, Pullovers, Warm-Up Suits, Rain Suits, Ski Suits, Jump Suits, Boots, Shoes, Slippers. |
| | 2,016,963 | November 19, 1996 | IC 025. Sports and leisure wear, namely jackets. |
| | 2,058,619 | May 6, 1997 | IC 025. Sports and leisure wear, namely shirts |

13

| | | | |
|---|---|---|---|
| | 2,179,796 | August 11, 1998 | IC 025. sports and leisure wear, namely shorts, pants, shirts, T-shirts, jerseys, tights, socks, gloves, jackets, swimwear, sweaters, caps and hats, pullovers, warm-up suits, rain-suits, ski suits, jump suits, boots, slippers, sandals, specific purpose athletic shoes, and general purpose sport shoes. |
| | 2,284,308 | October 12, 1999 | IC 025. sports and leisure wear, namely pants. |
| | 2,278,591 | September 21, 1999 | IC 25. sports and leisure wear, namely, shorts. |
| | 2,411,802 | December 12, 2000 | IC 018. All purpose sport bags, athletic bags, traveling bags, backpacks, knapsacks.<br>IC 025. Sports and leisure wear, namely, shorts, pants, shirts, T-shirts, jerseys, socks, gloves, jackets, swimwear, caps and hats, pullovers, sweat-shirts, sweat suits, track suits, warm-up suits; boots, sandals, specific purpose athletic shoes and general all purpose sports shoes.<br>IC 028. Sports balls and playground balls; guards for athletic use, namely, shin guards, knee guards and leg guards. |
| | 3,029,127 | December 13, 2005 | IC 025. Clothing, namely, T-Shirts, sweatshirts, jackets and coats. |
| | 3,029,129 | December 13, 2005 | IC 025. Footwear. |

| | 3,104,117 | June 13, 2006 | IC 009. Optical apparatus and instruments, namely, eyeglasses and sunglasses.<br>IC 014. Horological and chronometric instruments, namely, watches<br>IC 018. Leather and imitations of leather, and goods made from these materials in the nature of bags for general and sport use, namely, handbags, tote bags, waist packs, overnight bags, backpacks, knapsacks and beach bags; trunks; traveling bags for general and sport use; leather and imitations of leather and goods made from these materials, namely, wallets, briefcases.<br>IC 025. Sports and leisure wear, namely suits, shorts, pants, sweatpants, skirts, skorts, dresses, blouses, shirts, T-shirts, sleeveless tops, polo shirts, vests, jerseys, sweaters, sweatshirts, pullovers, coats, jackets, track suits, training suits, warm-up suits, swimwear, underwear, socks, gloves, scarves, wristbands and belts; headgear, namely caps, hats, visors, headbands; athletic footwear and leisure foot wear, namely boots, sandals, specific purpose athletic shoes and general purpose sports shoes. |
|---|---|---|---|

15

| | | | |
|---|---|---|---|
| | 4,910,643 | March 6, 2016 | IC 018. Articles made of leather and imitation leather, namely, backpacks, bags for general and sports use, carry-all bags, athletic bags, duffle bags, shoulder bags, sling bags, handbags, purses, tote bags, waist packs, overnight bags, knapsacks, shoe bags. IC 025. Clothing, namely, shirts, T-shirts, sweatshirts, jerseys, pullovers, tops, sweaters, pants, shorts, bottoms, jackets, coats, dresses, skirts, skorts, underwear, bras, socks, tights, scarves, gloves, belts, tracksuits, training suits, warm-up suits, athletic uniforms, swimwear, footwear, athletic footwear, boots, sandals, slides, caps, hats, visors, headbands. IC 028. Athletic sporting goods, namely, shinguards, soccer gloves, goalkeepers' gloves, leg guards; Balls for sports, soccer balls, basketballs, playground balls. |

16